*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RILEY, Minors.

UNPUBLISHED
April 25, 2024

No. 367083
Bay Circuit Court
Family Division
LC No. 23-013531-NA

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order removing her four minor children from her custody and care.[1] We affirm.

## I. BACKGROUND

In April 2023, petitioner filed a petition requesting that the court assume jurisdiction over the minor children, alleging that the home was unfit because of the parents' drug use, inadequate parenting, and domestic violence. In March 2023, the youngest child, AR, tested positive for methamphetamine and benzodiazepines shortly after premature birth and was placed in intensive care for respiratory issues. It was also alleged that the parents had limited contact with the newborn at the hospital, and did not timely comply with the hospital's mandatory parent training. Further, Child Protective Services had received a complaint from a relative that the parents had engaged in domestic violence while the children were present.

At the June 2023 preliminary hearing, a caseworker testified about the truthfulness of the petition allegations, but the parents denied that they were using drugs or had engaged in domestic violence. The trial court authorized the petition, but concluded that the children were not at

---

[1] The court also removed the children from the custody and care of the children's father, but he is not a party in this or any other appeal. Accordingly, references in this opinion to the singular "respondent" will be exclusively to respondent-mother.

imminent substantial risk of harm if they remained in the home, provided that the parents participated in in-home family services and submitted random drug screens.

In July 2023, petitioner filed an amended petition asking that the children be removed from the parent's custody because father tested positive for cocaine, methamphetamine, and amphetamine, and respondent failed to comply with the mandatory drug screens or participate in Families First services. Following a removal hearing, at which the trial court took testimony from the assigned caseworker and the paternal grandmother, the court authorized the amended petition. The court concluded that, given the children's young ages, there was a substantial risk of harm to the children if they remained in the home because of the totality of the circumstances, including drug abuse, domestic violence, and inadequate parenting skills. The trial court issued an order removing the children from the parents' custody and care and placed them in petitioner's custody pending an adjudication trial. The children were placed with a relative. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews a trial court's factual determinations for clear error. *In re LaFrance Minors*, 306 Mich App 713, 723; 858 NW2d 143 (2014). To be clearly erroneous, a finding must be more than possibly, or even probably, wrong; a finding is clearly erroneous when, although there is evidence to support it, upon reviewing the entire record, the reviewing court is left with the definite and firm conviction that a mistake has been made. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "The interpretation and application of statues and court rules are [] reviewed de novo." *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

## III. ANALYSIS

A court "may authorize the filing of the petition upon a finding of probable cause that one or more of the allegations are true and could support the trial court's exercise of jurisdiction under MCR 712A.2(b)." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). If the petition is authorized, the trial court must determine whether the child should remain in the home, be returned to the home, or be placed in foster care pending trial. *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020).

MCL 712A.13a(9) and MCR 3.965(C)(2) govern pretrial placement decisions. MCL 712A.13a(9) states as follows:

The court may order placement of the child in foster care if the court finds all of the following conditions:

(a) Custody of the child with the parent presents a substantial risk of harm to the child's life, physical health, or mental well-being.

(b) No provision of service or other arrangement except removal of the child is reasonably available to adequately safeguard the child from risk as described in subdivision (a).

(c) Continuing the child's residence in the home is contrary to the child's welfare.

-2-

(d) Consistent with the circumstances, reasonable efforts were made to prevent or eliminate the need for removal of the child.

(e) Conditions of child custody away from the parent are adequate to safeguard the child's health and welfare.

MCR 3.965(C)(2) essentially mirrors MCL 712A.13a(9).

Respondent argues that the trial court failed to establish all the grounds for pretrial removal. Specifically, she contends that there was no substantial risk of harm to the children remaining in her care, and that arrangements other than removal could have been implemented. We are not persuaded.

The record clearly showed that respondent had used methamphetamine and benzodiazepine because her newborn child tested positive for those substances shortly after a premature birth. Respondent also tested positive for amphetamines. The record does not support respondent's assertion that there was no evidence countering the paternal grandmother's testimony that the children were healthy and well cared for by respondent. Nor did the evidence support respondent's argument that the children's living circumstances were fundamentally unchanged from the time of the preliminary hearing, at which the referee concluded that there was no substantial risk of harm to the children remaining in respondent's care, to the time of the removal hearing.

At the June 2023 preliminary hearing, both parents denied that they were then using illicit drugs. But the parents were admonished that they needed to verify their claims of sobriety by providing random drug screens for the children to remain in their care. After the preliminary hearing there was new evidence of the parents' drug use. Thus, the trial court did not clearly err in finding it highly probable that respondent continued to use drugs because she refused to provide random drug screens, even on the day of the removal hearing. The caseworker opined that, given the children's ages, it was imperative that their caretakers be sober. The trial court reasonably concluded that respondent's illicit drug use presented a substantial risk of harm to not only her newborn child, but also to her three other children, who were all under the age of eight.

The trial court also did not clearly err in finding that the children had suffered emotional and mental trauma by witnessing domestic violence between the parents. The record showed that there was probable cause to conclude that the children had witnessed domestic violence, and did not support respondent's contention that the trial court unjustly considered, and held against respondent, that she had been a victim of domestic violence. A caseworker testified that, although the children had not been physically harmed by the violence, they had been emotionally harmed. One of the children disclosed during a forensic interview that she was frightened after seeing father punch respondent in the stomach while pregnant with AR. The child also reported that father smashed a window and had broken a sink, and that she tried to stop her parents from fighting. A caseworker's investigation also revealed that the police had been dispatched to the home several times in the past two years because of domestic violence, including in response to calls from respondent.

Respondent argues that the children were not at risk of harm from alleged domestic violence because she had already removed father from the home after he tested positive for illicit

-3-

substances. But domestic violence was only one factor in the totality of circumstances that the court considered. Further, the paternal grandmother testified that respondent, at times, i.e., repeatedly, would "kick" the father out of the house when she was frustrated with him, which implied that she would repeatedly allow him to return. A caseworker testified that respondent did not timely report that father was no longer in the home, referring to a conversation just before the July 2023 hearing. Respondent's veracity on other matters draws into question her truthfulness, motivation, and willingness to keep the abusive father out of the home. Further, even if father was permanently removed from the home, the substantial risk from mother's drug use and inadequate parenting skills remained.

Given these proofs, the trial court did not clearly err in finding that removal was necessary to adequately safeguard the children from respondent's drug use and domestic violence.

Respondent asserts that the trial court did not consider options other than removal such as transportation assistance, work accommodations, an in-home safety plan, or respondent's extended family-support system. Again, we are not persuaded.

The trial court, in effect, implemented an in-home safety plan after the June 2023 preliminary hearing, when it allowed the children to remain in the home, provided that the parents verified their sobriety by providing random drug screens, and that they had appropriate parenting skills by participating in in-home family services.

The record showed that in-home services in addition to those previously offered were not available to safeguard the children, and did not support respondent's argument that there was no evidence that her parenting skills were impaired. A caseworker testified that, in addition to concerns about respondent's illicit drug use and exposure to domestic violence, respondent did not seek regular prenatal care while pregnant with her youngest child, had minimal contact with the newborn while she was hospitalized, and did not timely engage in the necessary services so that the child could be discharged to her care. Another caseworker confirmed that the newborn was discharged three days later than medically necessary because of the parents' nonresponsiveness, leading hospital staff to worry that the baby would not be retrieved at all. Further, one of the subject children told a caseworker of an incident whereby her younger sibling was "drunk" after consuming alcohol, had bumped into walls, and left the house unattended.

Respondent contends that she was unjustly terminated from in-home services. She reported below that she missed two attendant appointments, one ostensibly because of a child's medical appointment, and the other because of a work-schedule conflict. On appeal, she reiterates that she had a work conflict, and also asserts that she had inadequate transportation. These arguments are unpersuasive. The assigned caseworker testified that respondent understood that it was imperative that she attend all in-home appointments because it was her third referral. Also, respondent's account of having taken a child to a medical appointment was highly suspect. The assigned caseworker's investigation brought to light no record of a visit with the local hospital or the children's primary-care physician, respondent was vague about the place of the appointment, and respondent did not provide any attendant billing or discharge documentation. The caseworker also explained that in-home service providers typically accommodated a parent's work schedule, including sudden schedule changes. Vehicles were observed parked in the driveway during attempted home visits, and father never complained of transportation problems. The paternal

grandmother testified that she, along with the paternal aunt, were able to help drive respondent where needed. Families First was involved in assisting respondent with services, such as child care, and a neighbor who had previously assisted with childcare had offered to help when needed.

The adequacy of available assistance from family members was not clearly established. The paternal grandmother testified that she had little knowledge of drug use in general, had not known that AR tested positive for drugs at birth, did not know where respondent worked, and was unaware of any concerns about domestic violence in the home. Such a support system is only as good as the parent's ability to recognize the need for, and willingness to rely on, that system for the children's safety, such as calling the support person when having a lapse in sobriety. Both parents denied any drug use or domestic violence, and falsely asserted that they were providing drug screens at other facilities. They were unwilling to participate in services after the June 2023 preliminary hearing, and had earlier declined to act on two referrals to Families First. It was thus unlikely that respondent would suddenly start showing that she was drug-free by submitting to random drug screens while taking advantage of other services.

This evidence similarly supported the trial court's findings that it was contrary to the children's welfare to remain in the home, and that reasonable efforts were made to circumvent removal.

Contrary to respondent's claim, the trial court properly considered whether the children's placement away from respondent would adequately safeguard their health and welfare. The referee explicitly acknowledged that removing children from the home was a last resort. To ameliorate the possible "devastating" harm to the children from being removed from the parents, the trial court emphasized that they should be placed in the least restrictive environment, preferably with a suitable relative, and ordered petitioner to provide respondents with liberal parenting time. The children were then placed with a relative. Respondent has not argued that this relative is ill-suited to care for the children. Placement was considered contemporaneously with the other requirements of MCL 712A.13a(9) and MCR 3.965(C)(2) at the July 2023 hearing before the trial court entered the order granting petitioner temporary custody of the children.

Respondent contends that the trial court did not consider, or make specific findings regarding, the best interests of the children individually, who she asserts had different needs, citing *In re Olive/Metts*, 297 Mich App 35; 823 NW2d 144 (2012). A trial court, when making its best-interest determination as required under MCL 712A.19(b)(5), must consider the children's needs individually before terminating parental rights. *In re Olive/Metts*, 297 Mich App at 42. However, respondent cites no authority that requires similarly individualized best-interest determinations when removing children from the home before adjudication. Moreover, in this case, the needs of each of the four children were similar in that they were all a very young age. It is unnecessary for a trial court to make explicit best-interest findings for children individually if their respective needs are not *significantly* different. *In re White*, 303 Mich App 701, 715-716; 846 NW2d 61 (2014), clarifying *In re Olive/Metts*.

Petitioner argues that respondent's claim is now moot because she later pleaded to the petition that she had "a two-year history of substance use that has negatively impacted her ability to provide appropriate care for her children." Respondent, in her reply brief, argues that it would be improper for this Court to consider her later plea because to do so would improperly enlarge

the lower-court record, see MCR 7.210(A), and also because she moved to withdraw her plea, the validity of which has not been resolved.  We need not consider any evidence arising after the July 2023 hearing because there was sufficient proof on the existing record to support the trial court's removal order.

      Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray